# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL J. MEDINA, | ) | CASE NO. 1:16CV02524 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

This matter is before the Court on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1(a). Plaintiff, Angel J. Medina ("Plaintiff"), challenges the final decision of Defendant, Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.

1

## I. PROCEDURAL HISTORY

In August 2009, Plaintiff filed an application for SSI alleging a disability onset date of June 1, 2009 and claiming disability due to breathing problems, sleep apnea, and depression. (Doc. No. 11 & 15, Transcript ("Tr.") at 133.). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 84, 90, 93).

On June 28, 2011, an ALJ held a hearing, during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 48). On December 12, 2011, the ALJ issued a written decision finding Plaintiff was not disabled. (Tr. 28). The ALJ' s decision became final on April 4, 2013, when the Appeals Council declined further review. (Tr. 1).

Plaintiff sought review in district court. (Tr. 486). On September 23, 2014, the district court reversed the ALJ's decision and remanded for further proceedings. *See Medina v. Comm'r*, Case No. 1:13cv1183 (N.D. Ohio) (McHargh, M.J.). Specifically, the court determined that the ALJ erred by failing to proffer post hearing evidence to Plaintiff. (*Id.*).

The matter was remanded, and, on June 22, 2015, another administrative hearing was held. (Tr. 511). Plaintiff, represented by counsel, testified with the assistance of Spanish language intepreter. (*Id.*). A vocational expert also appeared and testified. (*Id.*). On December 3, 2015, the ALJ issued a decision denying benefits. (Tr. 479). The Appeals Council denied review and the Commissioner's decision became fnial on August 19, 2016. (Tr. 467).

On October 14, 2016, Plaintiff filed the instant action challenging the Commissioner's final decision. (Doc. No. 1). The parties have completed briefing in this case. (Doc. Nos. 22, 24). Plaintiff asserts the following assignments of error:

(1) Whether the administrative law judge's finding that Mr. Medina had a limited education was supported by substantial evidence where Mr. Medina was in special education in Puerto Rico, he has required assistance with medical appointments due to his language barrier, he receives Spanish-language mental health care, and he has required interpreter services?

(2) Whether the administrative law judge's finding at Step 5 of the sequential evaluation is supported by substantial evidence where the administrative law judge erred in failing to find any limitation on Mr. Medina's ability to communicate in English or read in English and there is no evidence that Mr. Medina could perform the jobs identified if he is so limited?

(Doc. No. 22 at 1).

## II. EVIDENCE

As noted above, the issues raised in this appeal relate strictly to Plaintiff's English proficiency and literacy. The recitation of evidence that follows is accordingly limited to that particular issue.

Plaintiff was thirty-three years-old at the time he filed his application for benefits. (Tr. 499). The record shows that Plaintiff was a Spanish-speaker; that he was in special education classes in Puerto Rico; that he dropped out of high school before the 12th grade; that he never obtained a GED; and that on a number of occasions he requested and used an interpreter. (Tr. 239, 241, 246, 253, 280, 305, 764). Plaintiff's disability report indicates that could not speak and understand English, but he was able to read and understand English. (Tr. 149). During emergency room visits in March 2010 and January 2011, Plaintiff used Spanish language interpreter. (Tr. 850, 862). One consultative examination was completed with the assistance of an interpreter. (Tr. 196). The examiner, Richard Halas, M.A., reported that "[t]he evaluation was completed with the help of an interpreter as Mr. Medina speaks mostly in Spanish." (Tr.

3

196). A second consultative examination was conducted in English, and the examiner, Thomas Zeck, Ph.D., reported that

> It was most difficult to get information from Mr. Medina. He had difficulty with the English language and he seemed to have difficulty explaining himself and giving information to this examiner. * * * [I]t was very difficult to understand him because of his not having a good command of the English language. Very often is was necessary to ask him to repeat himself and when he did he was mor understandable.

(Tr. 279). The third consultative examination was conducted in Spanish. (Tr. 763).

During the 2011 administrative hearing, no interpreter was present, and Plaintiff appeared without representation. (Tr. 48). Neither Plaintiff nor the ALJ indicated that Plaintiff was having any difficulty understanding the ALJ's questions or responding to them. During the hearing, Plaintiff testified, in English, that he can could read and write English "a little bit." (Tr. 59). An interpreter was present for and participated in the 2015 remand hearing. (Tr. 513, 515, 521). Plaintiff testified that he knew how to write in Spanish, but not correctly. (Tr. 535).

Vocational expert Robert Mosely also testified at the hearing. (Tr. 538). The ALJ posed a hypothetical question to the VE, assuming an individual of Plaintiff's age, education, and vocational background, who could perform medium work as defined at 20 C.F.R. § 416.967(c), with additional limitations as follows: could never climb ropes, ladders, or scaffolds, limited to frequent handling and fingering with the upper extremities, limited to simple, routine tasks with no fast-paced work, no strict production quotas, only simple work instructions and decisions, and minimal changes in the work setting. (Tr. 539). Further, the hypothetical individual was limited to occasional and superficial interaction with the public, coworkers and supervisors. (Tr. 539).

//

//

The VE testified that such an individual could perform the jobs of cook helper (3,000 regional jobs, 600,000 jobs nationally); folder (1,200 regional jobs, 200,000 jobs nationally); and bagger (1,200 regional jobs, 100,000 nationally). (Tr. 540).

### IV. SUMMARY OF COMMISSIONER'S DECISION[2]

The ALJ determined that Plaintiff was capable of performing a reduced range of medium work. (Tr. 497). He was precluded from climbing ladders, ropes and scaffolds and limited to no more than frequent handling and fingering. (Tr. 497). Plaintiff was further limited to simple, routine tasks with no fast-paced work; no strict production quotas; only simple work instructions and decisions; minimal changes in the work setting; and occasional and superficial interaction with supervisors, co-workers and the public. (Tr. 497). The ALJ concluded, based on the VE's

---

[2] The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

5

testimony, that Plaintiff, despite his impairments, could perform a significant number of other jobs, and, therefore, was not disabled under the Act. (Tr. 500-01).

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support

another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

**VI. ANALYSIS**

Plaintiff raises two questions on appeal: First, whether substantial evidence supports the ALJ's determination that Plaintiff had "a limited education and is able to communicate in English"; and second, whether the ALJ erred by failing to consider whether Plaintiff's lack of English proficiency would have an impact on his ability to perform other work at Step Five. The Court addresses each question below.

### A. Whether the ALJ erred when determining that Plaintiff was able to communicate in English

Plaintiff first argues that substantial evidence does not support the ALJ's determination that Plaintiff had "a limited education and is able to communicate in English. (Tr. 499). Plaintiff further suggests that the ALJ erred by failing to state any reasons for reaching this conclusion.

Upon review of the administrative decision and the record as a whole, the Court concludes that the ALJ did not err and that substantial evidence supports his finding. While Plaintiff is correct that the ALJ did not articulate his reasons for reaching this conclusion, insofar as this was error,[3] the Court finds it was harmless, given the evidence described below. On June 28, 2011, Plaintiff appeared and testified before an ALJ without counsel and without an interpreter. On review of the transcript of this hearing, it is not evident that Plaintiff had any difficulty understanding or communicating with the ALJ. At the hearing Plaintiff testified that he was able to read and write in English "a little bit," but at no time during the proceedings did

---

[3] Plaintiff cites no authority to support his suggestion that an ALJ's failure to articulate specific reasons for his language proficiency determination amounts to *per se* reversible error.

either Plaintiff or the ALJ indicate that oral communication was a problem. The following, typical passages from the hearing transcript establish that Plaintiff could both understand the ALJ's questions and communicate coherent and meaningful answers:

>	Q	...Do you have a driver's license?
>
>	A	Not at this time.
>
>	Q	No? Did you have a driver's license before?
>
>	A	Yeah. It was suspended.
>
>	Q	Why was it suspended?
>
>	A	Because they stopped me one time for my birthday and I was drinking and they gave me a DUI.
>
>	Q	DUI, okay. What year was that?
>
>	A	I don't remember. I think it was 2009 or 2010. 2009, I think it was.
>
>	Q	Okay. Do you drink alcohol on a regular basis?
>
>	A	No.
>
>	Q	How much alcohol do you think you consume in a week? In an average week?
>
>	A	Maybe two or three beers a month. Sometimes I don't drink.
>
>	Q	What happened on the day you were caught?
>
>	A	I was driving and I was supposed to be speeding. I was over the speed limit.
>
>	Q	Did you say it was your birthday?
>
>	A	Yeah.
>
>	Q	Were you drinking on your birthday more than you normally do?
>
>	A	No, just that time only. I used to be working with some guy that got a restaurant and they got me a surprise.

Q   Oh.

A   And that's what happened that day.

Q   I see. Okay. Did your wife drive you to the hearing today?

A   My mom.

Q   Oh, your mom? I'm sorry. What's the highest grade you completed in school?

A   I guess go to 10. 10.

Q   Tenth?

A   Yeah.

(Tr. 57-58).

In another passage, the ALJ and Plaintiff talked about his depression:

Q   Okay, well, how about, you have worked at a number of different jobs. Or, no, excuse me, you worked as a dishwasher most recently, right?

A   Yeah, at Luchita's [phonetic].

Q   Okay. Now, tell me how the depression keeps you from working that job.

A   I started having problems because I got, like, stressed being in place for a long time. It's like, I don't know how to explain. It's just like I feel, like, suffocated. And the air. I have to get out.

Q   Did you have to talk with a lot of different people at the dishwasher job?

A   No.

Q   Did you deal with the public at all?

A   No. Where I used to work is like a little room separated from everybody. I didn't have contact with nobody in that corner. It's just me there.

Q   Okay. So if you were off by yourself, why couldn't you do that job now?

A   Now, I've got, they suspended me because I was working one Saturday. I'm sorry, Monday. And the people that used to work Saturday left it full inside the

10

> garbage can inside the restaurant and I had to pull it out to throw in the garbage can. When I was trying to pull it out, my back, something cracked in my back, so I didn't throw any of the garbage, so the next day I didn't go to work because I had to go to a medicine room because I needed something for the pain that I have. So the same day that when I got out of there and take the paper to my boss, he just told me that he didn't want to see it. Why I didn't call him and stuff. I said, "I'm sorry." And he fired me. I said, "Okay."

(Tr. 61-62).

The ALJ then questioned Plaintiff about his antidepressant medications:

Q     All right. Let's go back to the depression first of all. Are you taking any medication?

A     Yes.

Q     For your depression? What do you take?

A     I think it's Flexapine [phonetic] or something like that. I don't remember the name of the medication.

Q     Is it Prozac?

A     Prozac, yeah.

Q     How about Remeron [phonetic]?

A     Yes.

Q     Does that seem to help at all?

A     Yeah. Sometimes it's going up and down, sometimes I feel so bad. Sometimes I have to go to the hospital or trying to see if they can change my medication . But for now that's helping me a lot. Like, where I used to be before, with the medication now I feel a lot better.

Q     Feels better?

A     Yes.

Q     And how long have you been taking the Prozac and the Remeron? I'm showing since last February? Is that right?

11

| | | |
|---|---|---|
| A | | Yeah. They've been changing me medications. I've been taking medication for a long time. |
| Q | | Okay. Is it helping enough that you feel like you could go back to work again? |
| A | | Honestly, I only feel safe in my house. |

(Tr. 62-63).

Plaintiff then answered questions about his sleep apnea:

Q      All right. All right. You also referenced some sleep apnea. Are you still having trouble sleeping?

A      Yeah.

Q      Okay, have you undergone a sleep study?

A      Yes.

Q      And what was the result?

A      I did it twice. Now I'm worse because they have to put more pressure on the machine. So I can breathe better at night.

Q      Yeah.

A      Because I stop breathing at night.

Q      Are you using a CPAP machine?

A      Yes. Yes.

Q      Does that help?

A      Yes. It helps a lot.

Q      Okay. Are you more rested now during the daytime?

A      Kind of. Because I'm not used to the mask on my face. So I start, like, suffocating and I have to take it off sometimes. Because maybe it presses, I stress out.

(Tr. 62-63). These sample passages, which are typical and representative of the hearing transcript as a whole, show that Plaintiff was able to meaningfully testify before the ALJ, and they offer no indication that Plaintiff struggled with communicating in English. Neither the ALJ nor the Plaintiff expressed any concern with respect to Plaintiff's language proficiency. In the Court's view, this testimony amounts to substantial evidence supporting the ALJ's conclusion that Plaintiff was able to communicate in English.

The Court reaches this conclusion despite evidence Plaintiff claims supports the opposite conclusion. For instance, Plaintiff points out that an interpreter was used during two emergency room visits (Tr. 850, 862); that Plaintiff requested services in Spanish from a mental health treatment center (Tr. 241, 246); that Plaintiff had assistance to set up doctor's appointments to overcome the language barrier (Tr. 305); that a December 2009 consultative examination was completed with the help of an interpreter (Tr. 195); that another consultative examination conducted without the use of an interpreter proved to be difficult (Tr. 279); that a third consultative examination was conducted in Spanish. (Tr. 763).

Although this evidence may support Plaintiff's assertion that he had a questionable ability to communicate in English, under the substantial evidence standard this Court may not reverse "merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772-3. Furthermore, evidence that Plaintiff requested an interpreter, while establishing that he is a Spanish speaker, does not undercut the conclusion that Plaintiff is able to communicate in English as a second language. The 2011 hearing transcript demonstrates that Plaintiff was able to coherently answer the ALJ's questions, without the aid of

an interpreter and without counsel. The fact that Plaintiff may have requested an interpreter in other contexts does not diminish its evidentiary weight.

The Court concludes that the ALJ did not err by concluding that Plaintiff was able to communicate in English.

> **B. Whether the ALJ erred by failing to question the VE as to the impact of Plaintiff's alleged language deficiency on the availability of the identified jobs at Step five.**

Plaintiff maintains that the ALJ should have questioned the VE on the impact that his alleged language deficiencies would have on the availability of the jobs identified by the VE at Step Five. Although the ability to communicate in English is relevant to the ALJ's education determination, *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 (6th Cir.1995), the ability to communicate in English is not dispositive to the determination of disability:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance.

20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(I).

In this case, the ALJ tacitly acknowledged Plaintiff's language limitations by assigning an RFC that reasonably accommodated those limitations. Plaintiff was limited to "simple, routine tasks with no fast-paced work, no strict production quotas, only simple work instructions and decisions, and minimal changes in the work setting." And Plaintiff was limited to "occasional and superficial interactions with the public, coworkers, and supervisors." (Tr. 497). Given the above cited passages from the 2011 hearing, which demonstrate that Plaintiff was at least a reasonably proficient English speaker, the Court finds that the assigned RFC reasonably

accommodated whatever language limitations Plaintiff may have had. In addition, based on this RFC, the VE testified that Plaintiff was able to perform three unskilled jobs, Cook Helper, Folder, and Bagger. As just noted, an ability to communicate in English has the "least significance" with respect to work function at the unskilled level. During the hearing, counsel for Plaintiff had the opportunity to question the vocational expert with respect to the effect that his English language skills would have on the pool of available jobs, but he did not. The ALJ reasonably accepted the uncontroverted testimony of the VE on this score. *See Mohssen v. Comm'r of Soc. Sec.*, Case No. 12-14501, 2013 WL 6094728, at \*9 (E.D. Mich. Nov. 20, 2013).

Further, to the extent that Plaintiff had a limited ability to communicate in English, at least two district courts have held, under similar circumstances, that an ALJ does not commit reversible error by failing to explicitly question the VE as to the effect of a limited ability to communicate in English on the occupational base. For instance, in *Rivera v. Commissioner*, a district judge adopted the magistrate judge's reasoning that even though the ALJ did not state in her hypothetical question that Plaintiff had a limited ability to communicate in English, there was no error because the VE "ostensibly took into account Plaintiff's illiteracy because the only way to understand Plaintiff was through an interpreter." *Rivera v. Comm'r of Soc. Sec.*, No. 3:13 CV 772, 2014 WL 4956224, at \*19 (N.D. Ohio Sept. 30, 2014). Similarly, in another case, *Mohssen*, the magistrate judge reasoned that

> While it is true that the ALJ did not explicitly state in his hypothetical questions that Mohssen has a limited ability to communicate in English, this did not result in any reversible error; the VE was present at the hearing and had the opportunity to observe that Mohssen testified through an interpreter. Thus, considering that the purpose of developing a hypothetical claimant is to mirror the claimant's capabilities and limitations, the questions posed to the VE (which included a limitation to unskilled work that could be learned by visual demonstration) in connection with Mohssen's

hearing testimony, make clear that the hypothetical individual representing Mohssen had difficulties communicating in English.

*Mohssen*, 2013 WL 6094728, at *8.

In the present case, the Court has already concluded that substantial evidence supported the ALJ's decision that Plaintiff was able to communicate in English. To extent the evidence supports the finding that Plaintiff had a difficulty communicating in English, the VE here, similar to those in *Rivera* and *Mohssen*, was apprised of any language deficiency Plaintiff may have had by the fact that an interpreter was present at the 2015 remand hearing. The Court accordingly finds any error committed in this regard to be harmless.

## VII. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED.**

                                           *s/Jonathan D. Greenberg*
                                           Jonathan D. Greenberg
                                           United States Magistrate Judge

Date: August 22, 2017